### SHANNON v. UNION BARGE LINE CORP.

No. 10593.

United States Court of Appeals
Third Circuit.

Argued Feb. 4, 1952.

Filed March 4, 1952.

Rehearing Denied April 16, 1952.

Hymen Schlesinger, Pittsburgh, Pa., for appellant.

John R. Bredin, Pittsburgh, Pa., Dalzell, McFall, Pringle & Bredin, Pittsburgh, Pa., for appellee.

Before GOODRICH and HASTIE, Circuit Judges, and MODARELLI, District Judge.

GOODRICH, Circuit Judge.

This case involves a suit for injury to a barge employee on an Ohio River steamer, the "C. W. Talbot," owned and operated by the defendant. She has recovered for maintenance and cure. D.C., 96 F.Supp. 916. The present suit is based on a claim of negligence under the Jones Act and a claim that the vessel was unseaworthy.

The accident occurred as Elizabeth Shannon had finished her cleaning work in a stateroom on the "C. W. Talbot." She stepped from the door leading out to the deck, slipped on the deck and hurt herself as she fell against a metallic beam or bar which went diagonally across the doorway. Her suit was timely brought and the case was tried to a jury. The trial judge denied a motion for directed verdict. Following the verdict by the jury for the plaintiff, he set it aside and ordered a judgment n. o. v. for the defendant. D.C., 100 F.Supp. 13.

■ With regard to the claim based on alleged unseaworthiness, little need be said. The unseaworthiness is predicated upon the presence of this iron bar several inches wide which went diagonally across the doorway. It did not completely block the passageway but at the bottom of the doorway extended about three-fourths of the way across. It was a support built into the vessel and was one side of the structure which carried the paddle wheel of the vessel, a stern wheeler. There was nothing unseaworthy about it. True, it did partially block the doorway. It was, however, no hidden danger. There was another exit on the other side of the stateroom which was available to this employee as well as all the others. If she chose, for her own convenience, a quicker means of egress, albeit one somewhat more risky, that does not show unseaworthiness in the vessel.

Furthermore, one may doubt that the risk to her was increased by this bar across part of the doorway. There was still room to get out and she did safely get out. The only injury that came to plaintiff from the bar was that she, according to her story, hit her back on it when she fell. This injury could as well have happened if she had hit a closed door or railing or any other hard substance when she slipped.

■ The negligence claim requires more discussion. Shannon says she slipped on an oily spot on the deck. Presence of oil where she fell was denied by the master of the vessel and other employees. But this point must, after verdict, be taken in her favor.

Assuming that there was oil on the deck, how did it get there and who put it there? It is argued on Shannon's behalf that it must have come there through the act of other employees. Therefore, the argument runs, we are not concerned with the many cases denying recovery where no proof showed existence of a hazardous condition long enough to permit its discovery by the defendant. These cases embody the rule that a defendant is not to be held liable for injuries resulting from unsafe conditions on his premises unless he has had a reasonable opportunity to discover and correct the hazard. See Restatement of Torts § 343.

■ Plaintiff attempts to avoid this restriction on liability by arguing the doctrine of respondeat superior. However, no recovery can be allowed on this theory because the record is silent of any testimony that the oil was tracked onto the deck by employees of the "C. W. Talbot".

Indeed the injured woman, herself, testified that other persons than the ship's crew came on this deck. Among those were what she called "tanker men" employed on oil barges which were being towed by this steamer. These were not employees of the "C. W. Talbot" and Shannon's testimony is clear that they did come on the vessel. Her own testimony, therefore, eliminates the suggestion that prior to this accident only the ship's crew had access to the deck.

■ We are then left in the same situation as that shown in our case of Cookingham v. United States, 3 Cir., 1950, 184 F.

586

2d 213, certiorari denied 1951, 340 U.S. 935, 71 S.Ct. 495, 95 L.Ed. 675. There a member of the crew was hurt by slipping on some foreign substance on the ship's ladder. Nobody knew how it got there nor how long it had been there. Recovery was not allowed.

We agree with the trial judge that when we get down to this point the case is indistinguishable from the Cookingham case and the same result must follow. The judgment of the District Court will be affirmed.